STATE, EX REL. JOHN H. HINES, v. BOARD OF CHOSEN FREEHOLDERS OF ESSEX COUNTY.

1. The act of March 5th, 1883, reducing all special poll taxes in the state to $1, is not a special or local law within the prohibitions of the constitution.

2. A municipal corporation whose power of taxation is modified by a statute, cannot refuse to obey the statute upon the ground that its creditors are entitled to the exercise of its taxing powers as they existed before the statute, it not appearing that the modified power is inadequate.

On *mandamus.*

Argued at June Term, 1883, before Justices DIXON and PARKER.

For the relator, *S. J. Macdonald.*

*Contra*, *J. W. Taylor.*

The opinion of the court was delivered by

DIXON, J.   The relator, a resident and taxpayer of Essex county, seeks a *mandamus* against the board of chosen freeholders of that county, commanding them to assess and levy the amount of tax necessary for the purpose or purposes specified in an act of the legislature of this state, entitled "An act to ratify the bonds or other evidences of indebtedness heretofore issued or hereafter to be issued by the board of chosen freeholders of the county of Essex, in this state, for war purposes, and to provide for the payment thereof," approved February 28th, 1865, in the manner and upon the property specified and directed in and by an act of the legislature of this state, entitled "A supplement to an act entitled 'An act concerning taxes,' approved April fourteenth, one thousand eight hundred and forty-six," approved March 5th, 1883.

The board resists the application on two grounds only. First, that the act of 1883 is special and local, and, having been passed without notice given of the intention to apply for it, is unconstitutional.   Secondly, that it impairs the obligation of the contract into which the county entered by the issue of its bonds under the act of 1865, and for that reason also is unconstitutional.

As to the first ground.

The fourth section of the act of 1865, (*Pamph. L.* 1865, *p.* 192,) directs that a poll tax of $5 be assessed upon every white male inhabitant of Essex county of full age, in addition to the poll tax assessed under the general law of the state, for the purpose of providing a sinking fund to pay the bonds issued under the act.   An examination of our statutes discloses the fact that in, I think, every county of the state, there were

similar local laws authorizing counties, cities and townships to assess special poll taxes in amounts ranging from $1 to $25 per head. In view of this condition of things, the legislature, by the act of 1883, declared that hereafter there shall not be assessed upon any inhabitant of this state any poll tax for any of the purposes provided for in any special or local law, in excess of $1. Such a statute is not, in my judgment, special or local, at least in the sense in which laws of that character are prohibited by the constitution. It operates throughout the state, wherever any power to levy any special poll taxes exists, and reduces all such power to a common level, by fixing a limit to which it everywhere attains, and beyond which it can nowhere pass. In *Tiger* v. *Morris Common Pleas*, 13 *Vroom* 631, Mr. Justice Van Syckel, speaking for the Court of Errors, said : " One of the chief objects of the constitutional amendments was to bring into harmony the many local charters which had been previously granted, by removing the great diversity in powers which had been given to the various municipalities in them." The same idea had been previously expressed by Mr. Justice Knapp in *Sutterly* v. *Camden Common Pleas*, 12 *Vroom* 495, 499, and acted upon by the Supreme Court in *Van Riper* v. *Parsons*, 11 *Vroom* 123. The present law is, I think, in entire accord with this constitutional purpose. While it is not general, in the sense of conferring upon every local public corporation the same power to levy poll taxes, it is general, in the sense of putting that power, wherever it is found, upon one footing. Poll taxes levied under the authority of local laws, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, and upon the whole of this class this statute operates equally, by force of terms which are restricted to no locality. It is, therefore, not a local or special law, within the constitutional prohibition.

As to the second ground, that the act impairs the obligation of the contracts into which the county had entered, by issuing its bonds under the prior statute.

The primary object of the constitutional provision here

relied on, was undoubtedly only to preserve the rights acquired by contract, and not to curtail the powers of legislation which did not infringe upon those rights. It is clear that so far as the county itself is concerned, the powers of taxation delegated to it by previous laws remained, subject to modification or repeal, at legislative discretion. *New Brunswick* v. *Williamson,* 15 *Vroom* 165. So far as its creditors are concerned, there does not seem to be the slightest cause for apprehending that the power of taxation still existing in the county will be inadequate to the full satisfaction of their claims. Provided money enough be raised to meet the obligations of the county, it can make no difference to creditors whether it comes from poll taxes under the act of 1865, or from taxes on property, levied either under the general power of the county to pay its debts, or under the specific power delegated by the act of 1883 to assess on property the difference between a poll tax of $5 per head and a poll tax of $1 per head. There is every reason for thinking that the property tax will be quite as effective as the poll tax for securing the rights of creditors. Under these circumstances the county itself cannot be heard to complain of the mere mode in which the legislature requires taxes to be levied and raised. The county is not constituted the guardian of the rights of its creditors against the state, and so long as these creditors acquiesce, the county authorities must exercise their political powers in such manner as their political superior, the legislature, directs. *Gilman* v. *City of Sheboygan,* 2. *Black* 510; *State, Hall, pros.,* v. *Parker,* 4 *Vroom* 312.

The *mandamus* prayed for should be awarded.